The next case for argument is Stagg v. United States Department of State et al. Lawrence Rosenberg v. Stagg P.C. So if they said, if the regulations said absolutely no export of any of this material, including deemed export, it would be constitutional. But it's only not constitutional because the government will make exceptions. Rosenberg. I don't think that's right, Your Honor. I think even if there were an absolute prohibition, to the extent that speech is encompassed in the prohibition, we would argue it would be overbroad, and it would need to be more narrowly construed. And I would note, even classification decisions, which are generally not reviewable, there's a side door to judicial review through the Freedom of Information Act under Exemption 1 under the 1974 amendments to FOIA. So I don't think they would be able to get out of this by just exempting everything. But this leads me, Judge Lynch, to the way I think this Court can resolve this. Breyer. And let me go back to one other issue that has puzzled me from the very start. I think it was you who was here before us on the ---- Rosenberg. I was, Your Honor. Breyer. Yes. And my opponent was also here. Rosenberg. And during the preliminary injunction oral argument, I believe you stated and I listened to this again in preparation for this, if this Court were to write an opinion that says the material at issue here is not subject to the current law, that would be fine with us. And then in response to a follow-up question as to what do we mean by the material at issue here, the response was that that is the material subject to the public domain exception in the regulation. Rosenberg. Uh-huh. Breyer. So now you're here saying that we should look at this the way the government, at least at one time, interpreted this regulation, when I thought Judge Fehler wrote the opinion that last time you said that would be fine with you. Why am I ---- am I wrong in interpreting that? Rosenberg. Well, I don't think we meant to limit it that way. But remember, that was on a preliminary injunction, and we had narrowed the issues in the district court for purposes of the preliminary injunction. This is on the merits. And the subsequent material added to the record was somewhat broader than what was specifically at issue on the preliminary injunction. And so I don't think ---- Roberts. Is there something, is there still anything in the record that says what actually the material at issue is? That is to say what Mr. Stagg intends to talk about? Rosenberg. There is not, Your Honor. But we offered to put that in the record in camera before the district court. And Judge Fehler said that was not necessary because this is a facial challenge. And so the facial challenge part is kind of the key here. One thing that has become more clear since that decision is the government has in some way shifted its position again. The focus on the Internet. Breyer. Yeah, they shift around all the time in this case. Rosenberg. Well, I don't ---- Breyer. What is actually at issue and not at issue, which makes it a little difficult for a judge. But let's try to focus on what is at issue. This is a facial challenge to what exactly? Rosenberg. To the pre-publication license requirement that the government said in 2008. Breyer. Well, to what language in the statute? Because I thought at one time we were told, either in your ---- even in your briefing here, that is a facial challenge to the deemed export provision. Rosenberg. Yeah. It's the deemed export provision as it's interpreted by the government. And it's interpreted to include the pre-publication license requirement. The specific language of that requirement was repealed. That's part of the problem. It was repealed in 1984. It was the footnote that we talked about in our brief. I can read it to you, but it's the language that said, the burden for obtaining appropriate U.S. government approval for the publication of technical data falling within the definition in 125.01, including such data as may be developed under other than U.S. government contracts is on the person or company seeking the publication. That was the language of the requirement, right? It was repealed in 1984. For 31 years, the State Department told the public, we don't regulate the publication of technical data, period. It's not covered. Then in 2015, in the Federal Register notice, the government said, wait a second. We do regulate the publication of technical data. The actual language of the regulation relates to technical data, doesn't it? It does. It does. So what ---- so they unilaterally repealed it by some ---- by taking out a footnote about who had the burden of proof? On prepublication. And that's the ---- that's one of the reasons we argue it's unconstitutionally vague, because the problem here is ---- Well, I think my question ultimately was a little simpler than that. Yeah. You are saying you have a facial challenge to something. Yes. What are we declaring unconstitutional if we agree with you? Not the entire ITAR. No. Not the ITAR related to physical stuff like guns and tanks and nuclear weapons. Or conduct. Or conduct. But the way out of this, Your Honor, if I may ---- But ---- but would we be saying that there would be no preapproval required if you wanted to give a lecture on how to build an advanced type of nuclear weapon which your engineering firm has come up with in a public forum? That would be permissible if we strike down this regulation as you request. Is that correct? Potentially, yes, unless there's classified information. That wouldn't be allowed. Or if the ---- But it hasn't been classified yet. The guy just invented this new device or this new approach. And now he's going to talk about how to do it. Well ---- Or things can be classified avant la lettre, really. Yeah. I mean, if he does it and it's going to become classified, there are criminal implications in doing that. I think it would have to clearly be unclassified material. And it also would have to be a situation ---- How do you ---- does anyone ever know whether something is classified? Suppose it wasn't a nuclear weapon, but how to redesign your Kalashnikov to make it better? Is that ---- is that like ---- I know that right away that that's going to be classified material. Well, I think part of the ---- what the government has said is if you have reason to believe it would be classified, you run into criminal problems. Well, I don't know why I have reason to believe it. The point is, though, that I would know very clearly that it's technical data about weapons systems. Right. And you're saying that that should be ---- it's facially unconstitutional to require any preapproval of doing that. Yes. As long as it is pure speech, not conduct, that is different from the Mack case out of the Ninth Circuit where someone was, you know, stole naval information and was directly passing it to a foreign national. That clearly is impermissible under our reading as well. Well, if it weren't stolen information, if the exact same information ---- It wouldn't matter. If you hand someone a piece of paper, that's conduct. But if you say it out loud in a lecture, you read it from that piece of paper. So if it ---- assuming that it wasn't stolen information, the fellow in Mack was properly sanctioned because he handed a document to someone. But if he read the contents of the document to the person while the person ---- a foreign agent ---- while the person took notes, that would be different? No. No. Because the point is it's a difference between general speech. So if you give a presentation or post something to a website ---- So if he said to the foreign agent, come to my lecture next week where I will read this material, again, assuming that it is not classified, that, in your view, would be First Amendment-protected activity? Unless there's a specific intent to use the public presentation as a subterfuge to pass the technical data, that would still be conduct that would still be prohibited. But if I may, the way to resolve this case is one of two things. Either to simply narrow the ITAR the way the Ninth Circuit did in Edler, do exactly what the Ninth Circuit did in Edler, and as it doesn't apply, the prepublication requirement doesn't apply to pure speech. Right? Or ---- What about the fact that as far as you've ever said, all Mr. Stagg wants to do is to talk about material that is in the public domain? Is that now false? Does he now ---- is he now saying he wants to talk about material that is not in the public domain? So he primarily wants to talk about material in the public domain. I don't care what he ---- excuse me. I don't care what he primarily wants to talk about. What does he want to talk about? I'm sorry, Your Honor. He also wants to aggregate data and not simply collect it. And aggregating data, even if the data is originally in the public domain, if you modify it, if you add material to it, that is considered not in the public domain, and so that would be at issue. What? There's no rule that says that. That's the way the government interpreted it. That's the way my ---- There's no rule that says it. There's no rule that says that aggregating data, there's a ---- there was a notice that said it would be a rare circumstance that aggregate ---- it would be unusual ---- I don't remember exactly what the word was ---- that aggregating data would not ---- would not take it out of the public domain. But the rule says that public domain data is not subject to licensing. You're right, Your Honor. But the government has specifically said in this case in the district court that the aggregation Mr. Stagg intends to do may be subject to the regulations and the pre-publication licenses. And it's no longer all right with you if we say they're wrong. We have to say that it is unconstitutional for them to interpret it a particular way for you to be satisfied. The fact that they are making stuff up, and this Court says they're making it up, it's not in the regulation, leaves you still with a case or controversy as to whether if we are wrong in our interpretation of the statute and they are right, then that hypothetical state of affairs would be unconstitutional. To an extent. But I do think, Your Honor, if this Court were to enter judgment in Stagg's favor that says the pre-publication requirement doesn't actually exist and can't be enforced, I think that resolves the case. I don't think that's what I said. I think what I said ---- Okay. But I'm talking about the public domain, which is what I thought is what you were primarily, to use your word, talking about. There may be a separate problem about aggregation and modification. Yeah. And we're talking about the deemed export provision and how it applies to speech. And public domain is part of that. Aggregation is part of that. Internet is part of that. And it's not just confined to the public domain. The government has sort of shifted its position now to say, well, well, well, maybe printed publications aren't required. Maybe they're all public domain, but the Internet is not. Well, I'm going to be asking them about why the Internet is not in a library. Right. Because most people these days who go to public libraries, and material available in public libraries is exempted as public domain. Right. Most people go to the library, at least young people, not to look at books or magazines but to look at the little machine in the corner that lets them access the Internet if they don't have one at home. Absolutely. So that's their problem. I do think the Court could avoid the constitutional issue, as I said, by making a ruling that says there is no prepublication requirement that applies to pure speech. I think they could do that. I'm not interested in avoiding the constitutional issue so much, although there are circumstances in which we'd have to do that if there were a close question. But what I'm interested in is what you have a case or controversy about, and what it is that this gentleman actually wants to do that gives him standing to challenge this, and that also, it seems to me, has been something of a shifting target. Because from the beginning, we've been told that the main thing here is that the government wants to regulate material in the public domain, a position from which they have now receded, as I understand it, and which is what the regulation actually says. So it's not just information already in the public domain. He wants to be able to publish technical data into the public domain. That's part of it. And that, for 31 years, was not regulated by the State Department, and more importantly, is still in the parallel scheme that the Commerce Department has not regulated. The Commerce Department has made it so State has dominion over certain things, Commerce over others. Commerce says that if you publish technology, we don't regulate it, period. Robertson, they don't. Somebody else does. You're challenging somebody else. So what does the Commerce Department have to do? No. Commerce has dominion over certain things. That's part of what happened in the defense distributed case. The government made the determination that the, you know, 3D printing of weapons is within the Commerce Department's jurisdiction, and they don't have a pre-print publication license requirement. So our point is that you have an inconsistent sort of illusory requirement here that the government says it could and would apply against my client, that it has never disavowed, that the district court didn't completely, at least, or in our view, coherently strike down, and that is what we're challenging. My client wants to be able to take material from the public domain and republish it. He wants to publish technical data to a certain extent into the public domain, and he wants to be able to aggregate technical data in a new form. When you say aggregate and modify, and maybe I'm, you know, these regulations are perhaps not as clear as they could be, but if he puts two pieces of technical data into the same document, that's aggregation in your view? If it's just cutting and pasting, then it probably would be okay under even the government's interpretation. But if he takes it and explains it, if he adds technical data, if he takes a piece of one blueprint and says, this is for this, and this means this, and then takes another piece of the blueprint and says, this is for the other thing, and this means this, and together, they do a new thing, that's new technical data. And that would be regular. Well, that clearly is new technical data. Right. And why isn't that just, that's not really, you're not really getting anything out of the notion of aggregation and modification that makes this much broader than it used to be. If you say, you know what, here's some stuff that's in the public domain, like Einstein's theory of relativity or something, or something that Niels Bohr wrote, and here's some technical data about nuclear weapons that somebody has already published that's out there in the public domain. Here's another piece that's in the public domain. Now, put this together, Mr. Terrorist, anyone in my audience, and now you can create a new kind of technical, a new kind of nuclear weapon. And here's how to do it. It's facially unconstitutional for the government to say, thou shalt not do that, subject to if the government says, well, but we actually want the French to know about this. So, we are authorizing you to go tell the French government this information. As long as it is a general public presentation, and I want to be clear here. As long as it's a general public, so, okay, to get back, excuse me, to get back, to your facial challenge to deemed export, that means that this statute is unconstitutional as to all or virtually all applications, including that somebody could give a public lecture on how to manufacture a nuclear weapon, steering clear of classified information, but using the technical data that's somewhere in the files of whoever makes nuclear weapons for the government, Walmart or whoever makes them, and could give that lecture, right? That, that, is that a legitimate application of this statute? That one. So, you're saying, right, it would be unconstitutional if you needed a license to do it, but with respect, Your Honor, the instructions for how to build a nuclear weapon are online on multiple different websites, and they're not being regulated by the State Department. All right. The new version of the nuclear weapon that they don't have yet. Come on. I mean, let's be serious. I mean, it would be my question. You're saying that this scheme is unconstitutional as to virtually all applications, or at least as to so many applications, that it far outranks any possible unconstitutional application, and you're not telling us what your guy is actually planning to do. And, therefore, we should strike down the entire scheme as facially unconstitutional. Because it doesn't have procedural safeguards. If the State Department wants a constitutional scheme, have judicial review, limited discretion, and a 30-day time frame to get the decision done. That's what we're saying. That's what Lakewood and Friedman require. It's not that hard. I mean, the government does this in other contexts. Well, except you already said there's no judicial review in classification decisions, for example. Not initially. But, again, you can move to have the information declassified. There's then an administrative review. And then if you try to seek that information through the FOIA, and the government invokes Exemption 1 for national security, that is judicially reviewable. So there is, at least at some level, in that context. I have this problem. You have not shown that your client is adversely affected by all of this. Because you haven't shown how your client intends to use these materials. You haven't made part of the record. Earlier in your argument, you said Judge Fela told you you didn't need to do that for a facial challenge. But that doesn't prohibit you from putting in the record the information that we might find necessary to showing that you are adversely affected, and therefore have standing to make the facial challenge. So, Judge, my client did not want to put that in the record because he doesn't want to be limited to certain specific pieces of information. That would almost be like the prepublication required. He wouldn't be limited to it if he said, if he said, this is obviously not everything that I want to do, but these are examples sufficient to show that I am adversely affected. If, as Judge Fela concluded, he has not shown that he's intending to do anything that would give rise to the licensing obligation, then he's not adversely affected. And he hasn't shown that he is subject to licensing. The two responses. First of all, the government has taken the position repeatedly that if you believe that you need a license under the current government's current interpretation, then you need a license. And my client declared in the district court that he believed he needed a license, and so he's clearly within the gambit of the government's regulation. Moreover, Your Honor, this Court and the district court have addressed my client's standing I think four or five times, and each time concluded that he does have standing, because he has said that he wants to do all the things that I just discussed with Judge Lynch, that he wants to be able to publish, republish stuff in the public domain, publish into the public domain, modify and aggregate and modify it in some way, and publish into the public domain. All of that the government has expressly said. Breyer. When you say we've addressed this four or five times, we actually have addressed it once, right? Well, but the district court addressed it when he's revised. Okay. And when we did that, when we did that, there was we were talking about a situation where he was then saying he wanted to use only material that was in the public domain, and now things have changed. Because he just said he wants to publish things into the public domain that are not there already. Right. Okay. Right. I suppose that helps his standing in some respect. I think it does. But in any event, I think he clearly has standing to do this. I think, again, there are two ways. The Court can simply solve this problem by narrowing the construction so it doesn't apply to pure speech, which is what the Ninth Circuit did in Edler, and that's been the law in the Ninth Circuit ever since. The second thing it could do is simply say it's unconstitutional because it lacks procedural safeguards. Or the third thing, which I think, Judge Lynch, you were getting at, is it could interpret it and say, as properly construed, there is no pre-publication requirement that applies to speech. And that's that. I was getting at that. Okay. So we can solve this problem by declaring chunks of this unconstitutional, is what you're saying. We're declaring that the government's interpretation of it is simply wrong. The Court could do that. What the Court can't do is what the district court did, which is to say, well, we think part of the government's interpretation is wrong, and because of that, we're not going to give any relief to Mr. Stagg, because that doesn't make the --" that doesn't set clear precedent. It doesn't give my client relief. It doesn't make clear what the standards are going forward. So the one point on standing I wanted to add just briefly is that technical data is what's at issue here, whether it's in the public domain or not, and that is part of the complaint, and therefore, that further buttresses his standing position. One thing I also want to make clear, if I may, I know that I'm out of time, so I'll be very brief. This does involve core speech, because the speech, the technical data that we're talking about could be published in books. My client wants to publish it in books, put it on websites, talk about it publicly. There's an anecdote that he told me, that back when he was at the State Department doing this classification, one of the things that was considered technical data was a technique for shooting cars from helicopters. If that technique were in a Hollywood movie, the Hollywood movie people would potentially be subject to the ITAR for using that technique in a movie. If the New York Times were to publish a review of that movie and describe that technique in the review, the New York Times would potentially be subject to the ITAR and could face criminal sanctions. That's one of the reasons we took the position that the way this is applied is facially and fatally overbroad, because there's no limit on whether this would apply to core speech. Sotomayor, I don't understand why that why your argument should, the argument you just made should influence us in any way. I mean, it's obvious that if you put into a movie or into a into a book or into the New York Times stuff that's forbidden or stuff that you needed a regulation for, the fact that it's in a movie or in a book isn't an exemption from regulation. It's not, but it triggers, it even more strongly triggers the procedural protections that we're talking about, judicial review, limited discretion, a specified period of time. You don't get an exemption from stuff that you're not allowed to do by doing it in a movie or in the New York Times. No. Judge Levall, you're absolutely right. My point, though, is that this does affect core speech, and so the cases that deal with prior restraints of core speech all apply with full force in this case. And I see that my time is up. If the Court doesn't have any further questions, I'll go. You'll have an opportunity for rebuttal. Mr. Rosenberg, you've reserved a few minutes. Thank you.  My name is Dominika Tarzinska from the United States Attorney's Office for the Southern District of New York, appearing on behalf of the Department of State, the Directorate of Defense Trade Controls, and the Secretary of State. I think it's important to, as an initial matter, step back from the narrow reading of the ITAR's technical data provisions that the plaintiff suggests and focus on the normal operation of the law, against which Stagg is mounting a facial challenge, because Stagg is seeking to have the law struck down as a facial — on a facial basis. He is not asking the Court to review the law as applied to him, and he has not provided the basic information necessary for the Court to do that. Now, this is what I was puzzled about, and I'm not sure — I think not by Mr. Rosenberg's fault, but I'm not sure I got an answer exactly as to what is to be struck down. But I think he said he is not challenging the entire structure of the Arms Export Control Act or even of ITAR. He is challenging the technical data provision, is what I think it is. He seems to think it's the deemed export or maybe the two of those things together. Now, you could — can you not have a facial challenge to a piece of a statute or regulation? One could have a facial challenge to one of the sections of the ITAR, certainly. But as this Court recognized previously, technical data serves essentially as the functional equivalent of an item on the U.S. munitions list because it's the blueprints, the know-how, the specifications that would permit our foreign adversaries to produce those items on the U.S. munitions list abroad. If there is something specific at the periphery, that would be appropriate for an as-applied challenge when the Court and, frankly, the government has the benefit of — But I think what he's saying, though, is that, as best I can make out, the deemed export provision which applies to giving a public lecture cannot be applied constitutionally, period. And although, you know, he was a little dicey about nuclear weapons if it weren't already out in the public domain, et cetera, I think he's saying that there is nothing, even if it is technical data, that is the equivalent of how to make the weapon that could be prohibited from export, that even if it is the equivalent, if you are speaking it in a public lecture, that's what he says is automatically unconstitutional. It doesn't matter exactly which technical data he wants to talk about. That's the kind of as-applied part. But by deeming it to be an export to give a lecture in public — and I think he's also distinguishing intentionally giving that lecture to one foreign agent — but so long as there is a requirement that applies to public lectures without the safeguards for prior restraints, that is facially unconstitutional. Do you recognize that as a facial challenge? The deemed export provision, as it's written in the ITAR, and the definition of export has been amended during the course of this litigation, however, in substance the deemed export provision generally applies to the same thing, and that applies to providing technical data to a foreign person in the United States. Now, it is not specifically targeted at providing a lecture. However, if it is a lecture and there's a foreign person in the audience, then, yes, that would be a violation of the ITAR. But that is specific — But that you're saying is as-applied. That is as-applied. That is a specific application of the regulation. The law on its face prohibits exports of technical data, and among the definitions is the deemed export provision, which is providing to a foreign person in the United States. And the normal application of the ITAR's export provisions related to the ITAR, they apply to circumstances in which defense contractors and manufacturers send blueprints to their factories abroad for the production of fighter jets. They apply to circumstances in which, within the United States, such contractors may have foreign employees that appropriate authorization is necessary to allow sharing technical data with such individuals. The ITAR needs to be read for what it is, which is a regulation that is intended to protect our national security and to prevent the sharing of items on the U.S. munitions list and technical data, as this Court has recognized, which functionally serves the same purpose from foreign persons, foreign countries, and foreign adversaries. Does it cover the situation that Judge Lynch presented in the hypothetical, or at least his understanding of what your adversary's argument was? That is a lecture given which includes information and at which there may be a foreign person. If there is a foreign person at the lecture, then yes, that would be considered an export of technical data if it is ITAR-controlled technical data that is not otherwise in the public domain. If he gave a public lecture with the ITAR technical data in it, he wants to put up on a fighter, but he had passport control at the door, that would not require a license. No, it would not. And as is cited in the declaration submitted at Joint Appendix 170, frequently the conferences where ITAR-controlled technical data is discussed are limited to U.S. persons. So access to that forum is limited to U.S. persons, and their technical data can be shared and there are no licensing requirements. Is there a citizenship requirement for that or legal permanent residence? I believe legal permanent residence are included as U.S. persons, but I would need to double check that, but I believe that is true. What does this mean? It is seldom the case that a party can aggregate public domain data for purposes of application to a defense article without using proprietary information and creating a data set that itself is not in the public domain. What does that mean? Well, as the full language of that Federal Register statement suggests, it is when pieces as Judge Lynch suggested, when pieces of information that may be in the public domain are aggregated by an individual with the intent of creating a defense article, that individual most likely has technical know-how that is infused into the technical, the public domain information that creates new technical data. A situation in which Mr. Stagg would want to simply cut and paste pieces of technical data he found in two different books would not fall into that situation. That is not really aggregation in your view. It would be helpful if a regulation said that, I suppose, because it sounds to me like there is very little that a lawyer could do, at least your typical lawyer, maybe Mr. Stagg is not your typical lawyer, but an engineer or weapons designer might be in the position of being able to aggregate technical data that is already in the public domain into a new weapons system. But it is a little hard for me to understand how somebody whose interest is in briefing clients about what is allowed and what is not allowed is ever going to be in that situation. And the government has never taken the position, as Mr. Stagg's counsel asserted, that Mr. Stagg would be violating the ITAR by compiling pieces of, could it do so? I think, as Judge Fala wrote in her clarifying opinion in the motion in response to the reconsideration, that it is, or is citing her original opinion, that mere aggregation or modification of public domain materials does not, without more, remove the materials from the public domain. And so it is a question of that without more. So if the government were to try to, it's a question of, is more than what is in the public domain being infused? So if nothing more is infused. What were you reading from when you said mere aggregation without more? What is that from? So that is, at Joint Appendix 82, it is Judge Fala's motion for decision on the motion for reconsideration, in which she is referring back to. Those are Judge Fala's words. Those are Judge Fala's words, yes. But that complies. Excuse me, this puzzles me as well. The government did not cross-appeal in any way from anything that Judge Fala said. But can anybody anywhere rely on Judge Fala's opinion in confidence that the government is not going to nevertheless say that they violated the regulation, even if they come within the way Judge Fala interpreted the regulation? So the government has, as Your Honor has noted, not appealed any portion of that opinion. But of course, that opinion is not binding on a district judge, even in the Eastern District of New York or the Southern District of New York, let alone in the Eighth Circuit. That is correct. But the government has not, has accepted that ruling, indeed, in advance. But when you say they've accepted that ruling, for whom are you speaking at that moment when you say that? I am speaking for the Department of State, the DDTC, for my client. And does anyone, do we have to write that into an opinion and say, this is what we were told by the government, that this is the State Department's opinion? Because otherwise, there's no one else in the world who's going to know about what you just said. Well, the DDTC has already issued, in advance of the district court's opinion, had issued this response to the frequently asked question, clarifying statements that it had made. Yeah, but it's still sort of, but that, isn't that the one that still says it would be the rare case where aggregating data doesn't create new technical data? No, that is, that is the one that refers to information coming from the public domain. Okay. Let me ask you about the public domain as well. Because I found Judge Fela's position a little unclear about the internet and what on the internet is in the public domain and what is not. Because she said, and I think she's right about this, although the boundaries of it are a little unclear, that some things on the public domain, on the internet, I'm sorry, are like libraries. I mean, this is quite literally true. In fact, literal libraries operate on the internet. You might be able to look at books and things from a university library without going to the library, by going on the internet and looking at it. But other things on the internet, and I sort of imagine she has Wikileaks in mind, are not libraries. At the same time, when I read the regulation, I see that the public domain means information which is published, and I don't know, unless you think it has to go through Farris, Straus, and Giroux in order to be published. That means made public. So information which is published and which is generally accessible or available to the public at libraries, open to the public. Now forget anything but brick-and-mortar physical libraries the way the very branch I went to as an eight-year-old in Queens. In that public library, there is a terminal that connects to the internet, and it may not let you get pornography, but I'll bet it lets you get to Wikileaks. So why is the internet, anything that's on the internet, not published information that is available to the general public at libraries? Your Honor, that is not the natural reading of the regulations. Okay, I'm unnatural, but why is it not the right reading of that regulation? Because, one, I would note that at the time that this public domain exception was written, libraries, there was not the same prevalence of the internet and libraries. I go to the library. There's a book. It's got technical data in it. I can republish that to somebody. I can even put it on the internet. There's a magazine or a scholarly journal. I can republish that technical data and put it. There may be a video disc. You probably don't even remember those big things that look like 33 RPM regulations. They've still got some of those in libraries and machines that can play them. If that has technical data on it and it's in a library, presumably I can put that onto the internet and republish it. If it's a VHS tape, if it's a CD that's in the public library's collection, I take it I can use that. But I can't use something that's on something else that's in the public library  Anybody who's looking at this, it seems to me, is perfectly entitled to say public domain means published information that's available at a public library, which anything on the internet is. I would posit that the more natural reading of what is at a library, what is available to the public at a library, or from which the public can obtain documents, refers to actual physical materials at that library. Something that's generally accessible at a library does not mean things that are generally accessible at a library. It means things that are between hardcovers or softcovers or in magazines. The VHS tapes, the CD-ROMs, yes, no. But the internet, certainly not. Well, because as Judge Fala noted in her opinion, the nature of the internet is different than the definition of a library. The definition of a book is different than the definition of a library. But a book is available in a library, and so is the internet. And a library, as she explained in her opinion, is defined as a place where there's certain cataloging and there's certain collection of information I mean, I'm not sure what more I can say that the internet is a different animal than... I understand why the internet is different when you're worried about something being put on it. I know perfectly well that anybody who has a criminal record, anyone who owns property, anyone who's ever had to fill out financial disclosure forms knows that there's a big difference between information available to the public in the basement of the courthouse and information available to the public on the internet. And if you're worried about things getting out, I understand why there's a distinction that says just because it's available in the basement doesn't mean you can put it on the internet. But what are you worried about when it's already on the internet? Why can't someone republish in a book where it's less accessible something that's already accessible to the public via the internet at every public library in the United States? Well, because there are no standards to ensure what is put out on the internet, it limits the State Department's ability to try to have things that are dangerous and the republication of which would be problematic. It limits their ability to take that, to have that removed from the internet. It could also be something that's in some esoteric corner of... So if Mr. Assange leaked his information to the Berkeley Free Journal, which is handed out mostly on street corners but happens to be also collected in the Berkeley Public Library with all its back issues, someone could go in there, take that material, and put it on the internet, and that would be fine, because that's republishing information that's available on paper in a library. But someone who wants to do the converse and go to the library, find something on there that is available to the public, and then lecture to a bunch of lawyers and aerospace engineers about how the ITAR works couldn't use as an example something that he found on WikiLeaks' web page. And that's rational, and that's the most natural interpretation of this regulation. That is the government's position, but I would note that this is a facial challenge, and this is looking at one very, very narrow interpretation and one very narrow circumstance. So if there was a specific factual circumstance in which Mr. Stagg wanted to sue and he wanted to present to us what it was and where it came from, then that would be the opportunity for the court to issue such a ruling. I would note, however, that the idea that there's confusion about the internet being part of the public domain certainly was not a position that Mr. Stagg's counsel took when he was here at the preliminary injunction stage. In fact, at minute 45 of the transcript, in response to Judge Radji's questions, he explicitly said the internet is not part of this because the internet is not part of the public domain exception, at least under current law. Well, they've shifted and you've shifted. I understand, but that goes to the question of is the reading of the regulations understandable? And is it clear? And certainly it was clear to Mr. Stagg's counsel several years ago. Do we — I guess this is, I hope, my last question. The — I get the fact that there's something of a sliding scale between a pure facial challenge to the entire body of the regulations and a very specific as-applied challenge to this is what I want to do precisely, and as applied to me, it is unconstitutional. But there's kind of a space in between there where the plaintiff seems to want to position himself by saying, as we were discussing earlier, I'm making a facial challenge to a piece of the regulatory scheme. Suppose we call that an as-applied challenge. How does that change anything then? What are we doing if we're addressing a sufficiently narrow challenge? Because the one thing we know he wants to do, whatever he's going to do, whatever he wants to do, he wants to do it in this kind of public lecture hall where he doesn't have a passport control at the door. And he says it's unconstitutional to apply a licensing regime to discussing any kind of technical data in that forum. Is that a challenge that we have before us, whether that is something that requires the specific safeguards that have been applied to other forms of prior restraint? The factual record for such a challenge has not been developed because we don't know what it is that he wants to present and how he will present it. So we should assume it's the worst possible technical data, the worst for him that it could be. But that could be addressed facially then, that specific argument. Is that right? He'd have to meet the standards for a facial challenge, of course, but substantively to succeed. But is that something that is before us, do you think? I would argue that when looking at a regulation and looking to whether it burdens speech inappropriately, one must look to the normal application. And the plaintiff cannot choose this very specific circumstance in which he thinks there may be a constitutional problem, but he does not reveal the specifics that would allow the court to assess it. Because the normal application would certainly include handing it to a specific foreign agent, same information to a specific foreign agent. It would include Boeing or some other defense contractor giving those blueprints to a foreign company to manufacture a component. It would apply to all these other kinds of the very same sort of deemed export, maybe not giving it to the foreign, literal foreign company, but giving it to a foreign engineer who works for them. All of these sorts of things would be examples of technical data and deemed export that you would regard as the broad swath of what this applies to. Yes. Okay. Doesn't he need to demonstrate to the court that he is adversely affected by showing what he intends to do in order to be eligible to raise the facial challenge? That is the position the government has made repeatedly throughout this litigation. We sought jurisdictional discovery before the district court and were denied that request. The government has stressed that point. Judge Fela, the way she handled it, said that Stagg's standing was limited to challenging a very, the sliver of, basically challenging the public domain exception, and she found that that, because the information that Stagg had asserted that he wants to republish from the public domain did not require a license, therefore there was no prior restraint impacting. If we reach the conclusion that he has not shown, because he has not put forth examples of what he intends to do in a manner that would demonstrate that he would be subject to the licensing requirement in doing that, but he says, you know, I'm making a facial challenge, if it is true that one needs, even to make a facial challenge, one needs to be a person who is aggrieved by the application of the rule that is being challenged, does that essentially moot, for our purposes, all of the discussion about what all these provisions mean or don't mean? If he's not eligible to raise it, if he hasn't shown that he has the standing to raise the facial challenge by showing that he would be injured by it, is that the end of the inquiry? Well, this court must satisfy itself and can do so independently, even if not raised at this stage by the government, that standing exists at every stage of the litigation. So, yes, that would be the end of the inquiry, if there's nothing further. Thank you. Excuse me. Mr. Rosenberg. Yes. Some time for rebuttal. Thank you. I'd like to address the issues in reverse order. I think that will be easiest. So, first of all, on Judge LaValle's question on standing, number one, in prior restraint cases, there is a much lower threshold for standing. That's what this Court said in its last opinion. That's certainly what the district court repeatedly said. Mr. Stagg has absolutely established that he would be aggrieved because he wants to give these public lectures. He wants to be able to publish on the Internet. The government has already admitted that information on the Internet is technical data. There's no question he's aggrieved here. There's no question that there's standing. With respect to the Internet — actually, sorry. With respect to Judge Lynch's question about what is the general application, so very clearly we are not challenging anything but the application of the prepublication license requirement to speech. That's the facial challenge. So the other examples, Judge Lynch, that you gave with respect to conduct, handing it to a foreign national, et cetera, that's not a normal application. That's something we say that's beyond the ambit of this case. And our view is that every — Then why isn't that an as-applied challenge? I'm not — I'm trying to understand exactly the different parameters, but you are not saying that as written, the deemed export provision as applied to technical data is always and everywhere unconstitutional because the deemed export provision includes giving the information in a targeted way to a foreign agent. You are saying there is a particular kind of thing that this not an as-applied challenge because we're attacking it with respect to pure speech in all of its variations. Well, I don't know what you mean by in all of its variations. The actual provision that you're talking about refers to technical data as defined specifically in the regulations, and it says what is a deemed export. And a deemed export is conveying the information to a foreign person in the United States, right? Yes. That's what it says on its face, hence the term facial challenge. But you are not, it seems to me, saying that there is nothing, or not many things, anyway, that would constitute a deemed export under this provision, the prior restraint of which would be unconstitutional. What we are challenging is the application to publication. Hence, as applied. You're challenging the application of that regulation in a particular context. I don't, excuse me, I just, I mean, maybe you can help me by explaining why you want to fight that. What is the difference between calling it an as-applied challenge and calling it a facial challenge, at least so long as your client is doing the application that you are challenging? So I don't know that it makes a difference depending on the way you're thinking about it, but I want to be clear. I want to know what you're thinking. What Lakewood and Freedman say is that to challenge a prior restraint, you need to raise a facial challenge, that because prior restraints are so pernicious, the proper way to go attack them is with a facial challenge. We say that the regulation that existed in 1984 that specifically talked about publication of technical data ---- Breyer, I'm not talking about what happened in 1984. What is the regulation now? And, you know, it doesn't help to say there is case law that says to challenge a prior restraint, you need to do a facial challenge, and then say, therefore, I'm calling what I'm doing a facial challenge if it's not. We think it is because it is a challenge to the application to any kind of publication. So there is conduct, right, which is one bucket. There is publication, which is another bucket. This is the exact distinction that Judge Jones made in her opinion in defense distributed. Publication in one bucket, conduct in another bucket. We're challenging the publication bucket in all of its applications. And the examples you gave are conduct bucket. But if you ultimately think it doesn't matter ---- Breyer, I don't even know that all those examples are conduct. If one is saying something to somebody, why isn't that speech? If it's directly to that person, the way the regulations operate, that is conduct. That is done with the intent to provide technical data to a specific person or entity. That is not general publication. That's the distinction that the State Department made for 30 years. That's the distinction Judge Jones made in defense distributed. That's the distinction that led the government to settle defense distributed and pay its attorneys, the plaintiff's attorneys' fees. I mean, that's the distinction that's been used in this space. And so that's why I'm adhering to that distinction. Ultimately, though, Judge Lynch, if you want to write an opinion that says it's an as-applied challenge ---- Breyer, I don't want to write any opinion. I want to understand your arguments, and I want to understand what the law is. Okay. Okay? Don't ask me what I want to write. I don't want to write anything. I want to understand what the issue is before me. Right. And what you are saying is that you want to challenge the deemed export provision as applied to any kind of dissemination that is not targeted to a particular foreign person. Is that fair to say? Yes. And it ---- but to put a gloss on that, the way the publication has been interpreted over the years, and I've given you examples of that. But, yes, it's not directed to a certain person. I also gave you the example that if you use general publication as a ruse to provide it to specific foreign persons or entities, that could be regulated. But we're talking about general publication to the public on the Internet or in a book or in a movie or in an article. That is what we're talking about here. And we think it's still a facial challenge, but I understand the confusion. And I'm not trying to tell the Court what to do. I'm trying to explain this. Yeah. Because I think the law is a little murky on this. I do. But I think that what we envision this as is a facial challenge to that publication bucket that I was trying to distinguish from the conduct bucket. And, therefore, we say every application to publication, to pure speech, is unconstitutional without the procedural safeguards. And that gets me, if I may, to the national security point that was part of the discussion. Right? The government can say a prior restraint is justified because of national security. But in doing that, it's got to include the procedural safeguards. And I would note in the national security context and the concerns about nuclear weapons, right, that, again, this was not imposed by a State for 31 years. There's not a single example in the record of any harm that befell in that 31 years. Commerce has the same parallel set of regulations now. Nothing from commerce has shown harm in the public record. So there's no justification to say this is essential, this publication part of this is essential for national security because it's never caused a harm when it wasn't imposed. I would like to just brief you. If there were a standard of review or a court review process built into this, does that satisfy your question? That would help a lot. I mean, judicial review is the most important part. Does that answer the question? I don't know if it fully answers that. I mean, right. So Lakewood and Freedman say judicial review, not unbridled discretion. So the regulation says that you can reject a license for various criteria, world peace, or otherwise advisable, and otherwise advisable is too broad. I think you'd have to put specific criteria in there. And if the criteria was, you know, specific harm to national security, that might well satisfy it. And then there's got to be a time limit. That's part of Freedman. It can't just go on. The way the process works now is there's State Department review that can take a while, but then there's also Defense Department review that's open-ended. There may be a requirement to notify Congress. There's got to be something that says this has to be done in a limited period of time. That's what would satisfy it. I want to just make a couple quick final points. I see my time is up. I want to ask you something else. Yes. You said that in answering, in directing your answer to my question, you seem to say that reference to technical data solved the problem of whether the person standing has suffered an injury. But the definition isn't technical data. When that technical data is in the public domain, it's not subject to the licensing requirement. Isn't that correct? Something that might be considered technical data, something that might be considered technical data and subject to regulation. If it's material that's in the public domain, it's not subject to the licensing requirement. That may be correct, Judge LaValle, but the government just today said that publishing in the Internet is technical data that's not subject to the public domain exclusion. We agree that doesn't make sense, but that's their position. And Mr. Stagg and his declarations have said repeatedly, I want to publish this stuff on the Internet. No, no, no. It's not a question of what he wants to do. It's a question of where he finds it. It's both. Right. I understand. But let's be absolutely clear. We're not discussing the question of what could he publish on the Internet. That seems to be a separate matter. The issue, at least that I was discussing with the government, is what is in the public domain already. Right? No, but I think it's both, and I think it's clear. And the other point that I want to make is that he could take something that he finds in the basement of the courthouse and put it on the Internet, and that would be fine. As long as it's pure speech and publication and not directed or a subterfuge to direct it to a foreign entity, yes. And why isn't that almost automatically direction to a foreign entity, given everybody's access to the Internet? Because you need a specific intent requirement. If the government could show that somebody had a specific intent to use the Internet to pass information to specific foreign entities, right? What about not specific? What about, I believe the information is free and should be made free to all people in the world. And I think that would be, that should not be regulated. That's pure publication. I mean, it's not a subterfuge. It's not an export. Not a subterfuge. It's perfectly out in the open. I see no reason why people in Pakistan, in South Korea, in North Korea should not have access to this information about how to build weapons. So I'm going to disseminate it, period. End of story. I think that's pure speech. The government can regulate it, but it needs the procedural protections, or if it's classified, or there are other laws that may apply. But this shouldn't apply to that without those protections. I think that's right. One thing I do want to emphasize, though, is my opponent here did not say, and by the way, number one, we're not going to apply any of this against STAC. There's no disclaiming of the possibility of the aggregation stuff against STAC. Of course, because they don't know what he's going to do. That would be very hard put to say that they're never going to do anything to STAG, regardless of what he does. One response I wanted to make, though, on the technical data part, you had made the comment that when you aggregate, you may need some skill. But in defense distributed, the Court noted that a second-year law student was capable of putting together the materials that were technical data in that case. And so that's not a very satisfying case. Kennedy. Maybe not everybody agrees with Judge Jones about the appropriateness of allowing people to print 3-D weapons. Maybe not, but the government settled the case. Well, they settled the case. So they never got a chance to hear what the Supreme Court thinks. Right. And they may get a chance to hear what we think now. You may, if you push us hard enough. That's always a possibility, Your Honor. One final point, which is that I do think that the Court's questions, I think, have made clear that what the district court did is not satisfying for a number of reasons. And I think that feeds into our theme that we do very much hope for a decision from this Court that at minimum, if the Court believes that the things that Judge Stagg has made clear are in any opinion that, you know, gives declaratory relief, and I do think that on the Internet as well, it's just completely unclear right now, and we urge the Court to clarify that in any opinion. I understand the concerns about standing, but again, with respect, Mr. Stagg has made clear that he wants to publish technical data, whether it's in the public domain or not, that we don't believe that the government's differentiation between public domain information makes any sense right now, and we don't think that Judge Fea's decision clarified that to the extent necessary so that not only can my client, but others, rely on that for standards going forward. Thank you. Thank you very much. Thank you both. We'll reserve decision in this case.